IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED: MAY 5, 2009
09CV2772
JUDGE ANDERSEN
MAGISTRATE JUDGE ASHMAN
AO

| | |
|---|---|
| itelligence, Inc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 09 CV _____ |
| | ) |
| BRADLEY CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

NOW COMES plaintiff, itelligence, Inc., by its attorneys, Daniel K. Ryan, Alan R. Lipton, and Adam L. Saper of the law firm of Hinshaw & Culbertson, LLP, and as its Complaint against Bradley Corporation, states as follows:

### Parties

1.  itelligence, Inc. ("itelligence") is an Ohio corporation with its principal place of business located in Cincinnati, Ohio. itelligence maintains an office in Downers Grove, Illinois.

2.  Bradley Corporation ("Bradley") is a Wisconsin corporation with its principal place of business located in Menomonee Falls, Wisconsin.

### Jurisdiction and Venue

3.  Jurisdiction is proper pursuant to 28 U.S.C §1332 because complete diversity of citizenship exists and the amount in controversy exceeds $75,000.

4.  Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims asserted herein occurred in this District.

5.  Bradley regularly conducts business in the State of Illinois and the contract out of which itelligence's cause of action arises was in part negotiated and performed in the State of Illinois.

1

## General Allegations

6. SAP Americas is a leading provider of enterprise resource planning (ERP) software to businesses. itelligence is a leading global, small to mid-market business SAP provider and a Global Services Partner of SAP. itelligence performs a full range of SAP services, including consultancy, system integration, licensing, outsourcing, education, help desk support and hosting. itelligence has successfully implemented more than 1,500 SAP projects for more than 1,200 businesses worldwide.

7. Bradley is engaged in the business of manufacturing commercial plumbing fixtures and washroom accessories. Bradley sought to make available to its users the SAP ERP software in several areas of its business.

8. Accordingly, itelligence and Bradley entered into a Master Agreement bearing an Effective Date of December 7, 2007. A true and correct copy of the Master Agreement is attached as Exhibit A.

9. Pursuant to the Master Agreement, Bradley engaged itelligence to customize, configure, develop, implement and support the SAP ERP software.

10. itelligence agreed to provide the services and deliverables more fully described in a Project Governance Statement of Work dated December 7, 2007 ("Project Governance SOW") and a Statement of Work dated October 29, 2008 (sometimes referred to collectively as "Statements of Work"). True and correct copies of the Project Governance SOW and the Phase I SOW are attached as Exhibits B and C, respectively.

11. During the course of the engagement, Bradley requested itelligence to make numerous modifications and other changes to the SAP ERP software which were outside of the scope of the services described in the Project Governance SOW and Phase I SOW. Bradley executed various Scope Change Request forms ("Change Orders") memorializing some of the out of scope services it had requested itelligence to perform. True and correct copies of certain

2

6441853v1 7048395 2866

Case 2:09-cv-00832-LA   Filed 05/05/09   Page 2 of 6   Document 1

Change Orders are attached as Exhibit D.

12. Pursuant to Section 2.2(b) of the Master Agreement, in the event of a non-monetary, material breach that was not cured within thirty days after written notice was given to the breaching party specifying the default, the non-breaching party could terminate the Agreement by providing written notice of termination specifying the effective date of the termination. (Master Agreement, §§2.2(b) and 3.1, Exhibit A). In the event that Bradley terminated the Master Agreement, Bradley was required to pay itelligence all undisputed amounts for services rendered within thirty days of Bradley's receive of the invoice for such services. (Master Agreement, §2.2(b), Exhibit A).

13. Pursuant to Section 22 of the Master Agreement, Bradley agreed that, in the event that Bradley terminated the Master Agreement based on a material breach, Bradley could not withhold payment to itelligence of any amount greater than the fees or charges attributable to the services which Bradley claims were not performed. (Master Agreement, §22, Exhibit A). Bradley further agreed that it would not in any event withhold an amount in excess of the fees and charges for the one month preceding the first month in which Bradley withheld any payment under Section 22. (Master Agreement, §22, Exhibit A).

14. In the event of a termination of the Master Agreement or Statement of Work by Bradley, itelligence was to cease performance of all services, except certain transition assistance services ("Transition Assistance Services") provided that certain other conditions were met. (Master Agreement, §2.2(d)(i), Exhibit A; Project Governance SOW, §4.2.4, Exhibit B). Upon termination, Bradley was required to pay itelligence all sums due for services rendered. (Master Agreement, §2.2(d)(i), Exhibit A).

15. In the absence of an agreement between the parties relative to what the Transition Assistance Services would entail, they were to entail those services that were reasonable and necessary to enable Bradley to transition the services to another service provider. (Project

3

6441853v1 7048395 2866

Governance SOW, §4.2.4, Exhibit B). However, itelligence was entitled to decline to provide or to limit the Transition Assistance Services if Bradley failed to pay the undisputed amounts payable under the terms of the Master Agreement. (Project Governance SOW, §4.2.4(b), Exhibit B). Further, itelligence was not obligated to provide any Transition Assistance Services unless Bradley paid all amounts due and paid one month in advance as to each month of Transition Assistance Services to be provided by itelligence. (Project Governance SOW, §4.2.4(b), Exhibit B).

16. Pursuant to Section 13.9 of the Master Agreement, if any dispute arose under the Master Agreement which led to a proceeding to resolve that dispute, the prevailing party in such proceeding is entitled to recover from the non-prevailing party its reasonable attorneys' fees, reasonable expert witness fees, and out-of-pocket costs incurred in connection with such proceeding. (Master Agreement, §13.9, Exhibit A).

17. Section 16 of the Master Agreement sets forth certain mandatory, non-binding dispute resolution procedures. Section 16.1 prohibited Bradley from terminating the Master Agreement or any Statement of Work at any time prior to the latest period specified in Section 16 of the Master Agreement. The latest period specified was the issuance of a report by a three person panel (the "FDR Panel") which was to be constituted to try to resolve any disputes between the parties arising under the Master Agreement.

**Breach of Contract**

18. itelligence performed the contractual duties it owed to Bradley.

19. Following the time that itelligence had asserted its right to payment of past due amounts, by letter dated April 29, 2009, Bradley purported to terminate the Master Agreement and Statements of Work effective at 5:00 p.m. the following day, April 30, 2009.

20. Bradley's termination of the Master Agreement and Statements of Work was wrongful, without proper notice, and was in any event premature because Bradley was prohibited

4

from terminating prior to the issuance of a written report by an FDR Panel. The FDR Panel was never even fully constituted, much less did it issue a written report or even begin the fact finding process required under Section 16 of the Master Agreement in order to prepare a written report.

21. Bradley breached the contractual duties it owed to itelligence by engaging in the foregoing acts and omissions, including, but not limited to, failing to pay fees and charges that were due and payable under the terms of the Master Agreement, Statements of Work and Change Orders, terminating the Master Agreement and Statements of work without proper notice and without any material breach by itelligence; terminating the Master Agreement and Statements of Work prior to the latest period specified in Section 16 of the Master Agreement; and depriving itelligence of its right to cure any alleged material breach.

22. As a direct and proximate result of Bradley's breaches of the Master Agreement, Statements of Work, and Change Orders, itelligence has sustained damages, including, but not limited to, Bradley's failure to pay fees and charges that are due and payable to itelligence. The amount of the fees and charges due and payable exceeds the jurisdictional threshold of $75,000.

23. On May 5, 2009, itelligence accepted an offer made by Bradley to waive the provisions of Section 16 of the Master Agreement.

WHEREFORE, plaintiff itelligence, Inc. respectfully requests this Court to enter judgment in its favor and against defendant Bradley Corporation, in an amount equal to the sum of the fees and charges due to itelligence, contractual or pre-judgment interest, attorneys' fees, expert witness fees, out-of-pocket expenses, costs, and such other and further relief as the Court deems appropriate.

**JURY TRIAL DEMANDED**

5

6441853v1 7048395 2866

Case 2:09-cv-00832-LA   Filed 05/05/09   Page 5 of 6   Document 1

Respectfully submitted,

itelligence, Inc.

By: /s/Daniel K. Ryan
     One of Its Attorneys

Daniel K. Ryan
Alan R. Lipton
Adam L. Saper
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois 60601
(312) 704-3000
fax: (312) 704-3001

6